UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
UNITED STATES OF AMERICA,          :

                                                                    :

               -against-                   :

                                                     :        <u>SHORT FORM</u>

CHRIS BANTIS,                                :        <u>MEMORANDUM & ORDER</u>

                                                     :

                          Defendant.   :        21-CR-483 (ENV)

                                                     :
------------------------------------------------------------- x

VITALIANO, D.J.

      Defendant Chris Bantis is charged with one count of witness retaliation, in violation of 18 U.S.C. § 1513(b)(1), and one count of extortionate collection of credit, in violation of 18 U.S.C. § 894(a). Jury selection in this case is currently scheduled to start on November 9, 2022. Both parties have filed their motions *in limine*. The Court having considered the submissions of the parties, the motions are resolved in the manner and for the reasons as set forth below.

| I. Government's Motions *in Limine* | |
|---|---|
| Motion | Ruling |
| (A) Pursuant to Federal Rules of Evidence 401–03 or, in the alternative, 404(b),[1] the government seeks to introduce evidence of Bantis's 2014 | (A) Count One requires proof that the defendant retaliated against a person for participating in a federal proceeding or for providing information to law enforcement. 18 U.S.C. § 1513(b). The fact that |

---

[1] Unless otherwise indicated, all rule references will be to the Federal Rules of Evidence and further citation will be omitted.

| | |
|---|---|
| loansharking conviction. This evidence includes a summary of the conviction's events, as well as John Doe #1's assistance and portions of his victim statement given at Bantis's sentencing. Gov't Br., Dkt. No. 51, at 6–10.[2] | John Doe #1 participated in the investigation against and sentencing of Bantis is admissible as direct evidence of a statutory element of Count One. Bantis has offered to stipulate that John Doe #1 testified against him at "a prior proceeding." Def. Br., Dkt. No. 45, at 5. This does not fully capture, however, the probative value of those facts, and, in any event, it is the government and not the defendant who determines the contents and contours of the case-in-chief it intends to offer. |
| | Indeed, the government's first *in limine* request claims that right. *See Old Chief v. United States*, 519 U.S. 172, 183 (1997). The content of John Doe #1's victim statement and the name and nature of the 2014 conviction are direct and elemental evidence highly probative on Count One as well as direct evidence that, based on his awareness of defendant's past loansharking, John Doe #2 understood defendant's alleged interaction with him to be extortionate. (This, of course, presumes, with |

---

[2] All citations to pages of the parties' briefing refer to the Electronic Case Filing System ("ECF") pagination.

| | |
|---|---|
| | respect to Count Two, the government intends to establish through other admissible evidence John Doe #2's awareness of defendant's past loansharking.) To close another loop, the government's desire to offer John Doe #1's cooperation in the investigation of Bantis's 2014 loansharking prosecution as evidence of his motive to retaliate against John Doe #1 as alleged in Count One would be proper since it would be of the same stripe of evidence of John Doe #1's victim impact statement.  But, the government is cautioned that such evidence will not be permitted merely to summarize all of its proof supporting the 2014 prosecution.  To the extent the evidence becomes cumulative, probative value decreases and prejudice increases.  Objections to such evidence on that ground will be sustained under Rule 403.  The caution to the government is to choose wisely among its potential proffers. |
| (B) Pursuant to Rules 803(1), 803(2), and 803(6), the government seeks to | (B) This ruling assumes that the government will lay an appropriate evidentiary foundation, for example, |

3

introduce four separate 911 calls into evidence. The calls were apparently made by relatives of John Doe #1, the individual against whom Bantis is accused of retaliating. The Court has reviewed each of the audio recordings. Gov't Br. at 10–13.

the business records exception, for each of these exhibits. Substantively, the ruling will address whether admission constitutionally satisfies an exception to the hearsay rule set forth in Rule 801.

Exhibit 1

To qualify as a Rule 803(2) "excited utterance," a statement must be related to a startling event and made "while the declarant was under the stress of excitement that it caused." Rule 803(2). The declarant must have personal knowledge of the events she describes. *Brown v. Keane*, 355 F.3d 82, 90 (2d Cir. 2004).

Most of Exhibit 1 meets this test. First, an exciting event occurred. The declarant was visited by a person who had been harassing her, who she felt needed to be chased away, and who she believed had a weapon. Second, the caller is under stress from this event: She speaks rapidly, even misspeaking at times, such as when she misstates the harasser's height. Exhibit 1 at 2:15–18. More tellingly, despite her use of the word "annoyed," the caller's

4

disclosure that she didn't notice what clothes the man was wearing evidences her agitated state of mind. *Id.* at 1:29–32. Third, the caller's testimony principally "relates to" the exciting event.

Portions of this call do not meet an exception to the hearsay exclusion. The caller admits not having personal knowledge of the man's clothing, and so the portion stating ". . . Light colored shirt" until "[Q:] White shirt, blue jeans? [A:] Yes." is inadmissible. *Id.* at 1:40–48. Second, the portion stating, "So I'm assuming he ran back in to get a weapon," is inadmissible hearsay—the declarant herself is admitting that she does not have personal knowledge of the matter asserted and so must "assume" he had a weapon. *Id.* at 2:23–25. Other than these portions, the statements in Exhibit 1 are excepted from the rule against hearsay. Rule 803(2).

This entire exhibit, however, implicates Bantis's Sixth Amendment right to confrontation. The Confrontation Clause precludes "testimonial statements" by witnesses that a criminal defendant

5

has not had the opportunity to cross examine. *Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 2273, 165 L. Ed. 2d 224 (2006). A statement is "nontestimonial" if its primary purpose is to "enable police assistance to meet an ongoing emergency" and testimonial if its primary purpose is to "establish or prove past events" for later prosecution. *Id.* Critically, the caller states that she was directed by law enforcement to make 911 calls, presumably to establish an evidentiary record. Exhibit 1 at 0:53–58. There was no ongoing emergency; the man had fled the area. *Id.* at 0:48–51. The caller said she knew "exactly" where he lived, *id.* at 0:50–52, which suggests her intent to help law enforcement apprehend him some time in the future. The primary purpose of this call is testimonial, and it cannot be admitted unless Bantis is given the opportunity to cross-examine the declarant.

But, that is the final nail in the coffin. If the declarant is available to testify, her in-court testimony is the best evidence of these facts and the out-of-court statement is mere bolstering. On that

6

basis, the government's motion to admit Exhibit 1 into evidence is denied.

Exhibit 2

Exhibit 2 is easily dismissed. The caller is clearly not present at the scene of the events and has no personal knowledge of them. This exhibit is inadmissible in its entirety. *Brown*, 355 F.3d at 90.

Exhibit 3

Most, if not all, of this exhibit and Exhibit 4 are likely admissible as present sense impressions. However, because they both easily qualify under the broader excited utterance exception, it is unnecessary to perform both analyses.

Exhibit 3 is a textbook example of an excited utterance. The startling event is the visit from someone the caller believes wishes to harm her. Her voice clearly indicates that she is frantic and distressed by the event, which she is personally witnessing. Lastly, her statements all concern the exciting event. References to the prior day's

events—that the man "was armed yesterday," Exhibit 3 at 0:47–48, and "tried to shoot" the caller, *id.* at 0:27–30—are similarly admissible; a reminder of a traumatic event, such as the prior day's visit by this man, can prompt an excited utterance about that remembered event. *See United States v. Tocco*, 135 F.3d 116, 128 (2d Cir. 1998); *see also* WRIGHT & MILLER, WRIGHT & MILLER'S FED. PRAC. & PROC. § 6820.

Finally, the exhibit does not implicate the Confrontation Clause. The caller indicates that the man is currently there and that he has a weapon, which indicates without question an ongoing emergency. This exhibit is admissible, and the government's motion to that effect is granted.

Exhibit 4

This exhibit follows suit. It memorializes an admissible excited utterance. Once again, there was a startling event—the appearance of a man threatening to shoot the caller—and the caller's statements were made under the stress of that event,

8

|  | which was ongoing while he spoke to 911. Personal knowledge is also satisfied; during the call, he claims to have personally seen the man carrying a gun. Exhibit 4 at 0:58–1:03. Bantis's argument that no gun was found on Bantis after the encounter is irrelevant for the purpose of establishing evidentiary admissibility, though he is welcome to dispute the declarant's observation at trial. Lastly, this call does not implicate Bantis's Sixth Amendment rights. Although the caller clearly had *some* purpose of following the FBI's direction and creating an evidentiary record, *see id.* at 1:19–25, his *primary* purpose was indisputably to respond to an ongoing emergency, given his apparent belief that someone with a gun was threatening his life. Therefore, the statement is not testimonial, *Davis*, 547 U.S. at 822, and will be admitted as an excited utterance on the government's proffer. |
|---|---|
| (C) Pursuant to Rule 801(d)(2), the government seeks to introduce inculpatory statements allegedly made | (C) The government's motion as to this exhibit is granted as well. For the most part, substantively, Bantis does not oppose the government's motion to |

9

| | |
|---|---|
| by Bantis. This includes both recordings of calls during his detention at MDC and text messages recovered from his cell phone. Gov't Br. at 13–15. | admit what are essentially party admissions and clearly admissible under the Rules of Evidence, assuming that an appropriate process foundation is laid by the government. The government is again cautioned, though, as discussed in I(A), *supra*, that the rule against cumulativeness will be in play and that it should plan accordingly.[3]<br><br>Bantis does, however, offer a substantive objection to the excerpt from his jailhouse phone call reproduced in Exhibit 5 in which he bemoans that he is "dead to rights" and that he "should've copped out yesterday." Exhibit 5 at 0:19-21, 0:32–36. He argues that the "rule of completeness" applies to this recording. Def. Br. at 19; Rule 106. Specifically, he requests that, if the inculpatory statements of Exhibit 5 are entered into evidence, then the statement, "There's gonna be ten of them up there lying, saying I had this, this, this, the whole nine yards," must be included to provide the jury the entire context of the |

---

[3] Bantis's objections to the inclusion of any evidence recovered from his cell phone is addressed in related suppression orders. *See* Dkt. Nos. 35, 70.

10

|  | statement. *See* Def. Br. at 19 (quoting Exhibit 5 at 0:43–48). |
|---|---|
|  | The Court agrees. This statement suggests that Bantis's pessimism about his prospects at trial may have been due to anticipated dishonesty by witnesses. The jury ought to decide for themselves if this is persuasive. The Court holds that the admission into evidence of the audio from Exhibit 5 as sought by the government must include this statement. |
| (D) The government seeks preclusion of evidence pertaining to Bantis's health. Gov't Br. at 15–17. | (D) It is hard to imagine how defendant's health could be relevant at trial. But, Bantis has not sought *in limine* to admit any such evidence. With no specific evidence related to his health before the Court, the motion is denied as moot. |
| (E) The government requests that Bantis be precluded from referencing the possible consequences of conviction but that the government be given the right to cross-examine him on | (E) The request to preclude Bantis from introducing evidence concerning potential punishment is granted. With the exception of a preliminary question regarding the possibility of a prison |

11

| | |
|---|---|
| that subject if he testifies. Gov't Br. at 17–18. | sentence if found guilty by the jury, the request to cross-examine Bantis on those facts is denied.<br><br>Courts routinely preclude evidence of a defendant's potential punishment as irrelevant, and while Bantis's potential punishment may be relevant to his credibility as a witness, it is clear from the nature of the proceedings that Bantis faces punishment. The probative value regarding his credibility is substantially outweighed by the danger of confusing the issues, misleading the jury, undue delay and wasting time. |
| (F) Pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure, the government requests, first, that the parties be ordered to disclose their list of exhibits intended to be introduced at trial at least one week prior to trial, and second, that Bantis be ordered to disclose any witness statements at least two days prior to each witness' testimony. Gov't Br. at 18–19. | Granted without opposition. |

| II. Bantis's Motions *in Limine* | |
|---|---|
| (A) Pursuant to Rules 402 and 403, Bantis seeks to preclude any evidence related to his 2014 conviction. Def. Mot., Dkt. No. 41, at 7–8. | (A) This request is addressed under item I(A) above. |
| (B) Pursuant to Rules 402 and 403, Bantis seeks to preclude any evidence of his 2018 reprimand while on supervised release from his loansharking conviction. Def. Mot. at 8–11. | (B) To the extent the violation of supervised release has any probative value, it is outweighed by its prejudice. The motion to preclude it under Rule 403 is granted. |
| (C) Pursuant to Rules 402 and 403, Bantis seeks to preclude any evidence collected from his cell phone. Def. Mot. at 11–12. | (C) This request is fully addressed between I(C) above and this Court's orders in ECF Docket Numbers 35 and 70. |
| (D) Pursuant to Rules 402 and 403, Bantis seeks to preclude admission of the second half of his post-arrest interview. Def. Mot. at 12. | (D) This evidence has not been provided to the Court, and so it cannot rule on its admissibility. The Court will note the general rule that statements made by an opposing party are not hearsay. Rule |

13

| | |
|---|---|
| | 801(d)(2). Given the present posture of defendant's request, however, a ruling must be deferred. |
| (E) Pursuant to Rules 106 and 403, Bantis seeks to preclude all or portions of his recording calls at MDC. Def. Mot. at 12–14. | (E) This request is addressed in I(C) above. |

So Ordered.

Dated: Brooklyn, New York
        October 28, 2022

                                              /s/ Eric N. Vitaliano
                                              ERIC N. VITALIANO
                                              United States District Judge